SCANNED

DATE: 12-14-04

BY: _____ CMY _____

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| PETER L. DUFFY, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | CIV. NO. 04-10547-LPC |
| DEPARTMENT OF NAVY, | ) ) | |
| Defendant. | ) ) | |

## DEFENDANT'S MEMORANDUM
## IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

### INTRODUCTION

In this action, Plaintiff seeks, pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. §552, and the Privacy Act (PA), 5 U.S.C. §552(a), the release of information withheld by the defendant United States Department of Navy.  At issue are only three documents, consisting of six pages; many other documents have been released to plaintiff.

### SUMMARY

The Privacy Act does not compel disclosure of the three documents to Plaintiff because the documents are not covered by the Act.  The Privacy Act covers only documents relating to an individual that are maintained in a "system of records".  5 U.S.C. §552a(d).  The three documents are e-mails sent between several agency personnel and are not maintained in a "system of

1

records" under Plaintiff's name.  Even if they were, they are not responsive to Plaintiff's request.

The documents are not required to be disclosed under the FOIA, either.  they are not responsive to Plaintiff's request, and they are properly withheld from release under exemption 5 of the FOIA, 5 U.S.C. § 552(b)(5), the deliberative process privilege.  Moreover, the identities of third parties mentioned in Documents Numbers 50-52 are properly withheld under exemption 6 of the FOIA, 5 U.S.C. § 552(b)(6).

## STATEMENT OF FACTS

### A.  Procedural Background

By electronic email submission on February 28, 2002, Plaintiff submitted a FOIA/PA request to the Naval Undersea Warfare Center, Division Newport (NUWCDIVNPT).  Plaintiff's FOIA/PA request sought access to the following records:

a) Electronic mail (email) sent to the Commander, NUWCDIVNPT from plaintiff on our about April 1, 2001;

b) Email sent to the Commander, NUWCDIVNPT from plaintiff on our about July 10, 2001

c) Any email that the Commander, NUWCDIVNPT sent, either forwarding or referencing the a) or b) emails identified above, to anyone within the Department of the Navy (DON), and;

2

d) Any correspondence/record to any employee within the DON, in reference to plaintiff's Naval Inspector General Complaint, Office of Special Counsel Complaint, utilization of leave, placement in a Leave Without Pay Status (LWOP), denial of advance leave, 2001 Performance Evaluation, and 2001 Performance Award.

On May 10, 2002, NUWCDIVNPT forwarded to Plaintiff twenty-seven (27) documents determined to be appropriate for public release. At the same time, NUWCDIVNPT advised Plaintiff that since it did not have initial denial authority, it was forwarding additional documents to NAVSEA for review and release determination.

On January 9, 2004, NAVSEA issued a final response to Plaintiff's FOIA/PA request. NAVSEA determined that the Privacy Act did not apply because the records forwarded to NAVSEA for processing were not normally retrieved using a personal identifier. NAVEA determined that eight pages were appropriate for release in their entirety, and that two additional pages, except for names of third parties, were appropriate for release. The remaining 75 pages, in their entirety, were determined to be exempt from mandatory disclosure under subsections (b)(5) and (b)(6) of the FOIA.

3

The January 9, 2004, partial denial letter advised Plaintiff of his right to file an administrative appeal to the General Counsel of the Navy within 60 calendar days, which Plaintiff did, on January 24, 2004.  Plaintiff specifically appealed (1) NAVSEA's determination that the Privacy Act does not apply, and (2) NAVSEA's determination that FOIA exemptions (b)(5) and (b)(6) protected each of the seventy-five (75) pages that were withheld in their entirety.

On March 1, 2004, the Office of the General Counsel of the Navy responded to Plaintiff's FOIA/PA appeal.  The Office of the General Counsel concluded (1) that Plaintiff was not entitled to access under the Privacy Act; (2) that responsive information was properly withheld under the attorney-client privilege, the attorney work product and the deliberative process privileges of exemption (b)(5), (3) that portions of the responsive information were properly withheld under exemption (b)(6); and (4) that segregable portions of three documents were appropriate for disclosure, and released those portions to the plaintiff.

On or about November 4, 2004, the Navy released to Plaintiff 52 of the 55 previously withheld documents.  Three documents, consisting of six pages, were not disclosed.  These documents are printed copies of emails that were sent to and from management

4

officials at Naval Undersea Warfare Center Division Newport
(NUWCDIVNPT). [Attachment 1, Declaration of Stephanie Carr].

Unredacted copies of the three documents are submitted to
the Court for in camera review, should the Court conclude that
such review would assist in ruling on the propriety of
Defendant's withholding.

**ARGUMENT**

A.   **Summary Judgment Is the Appropriate Method For
Resolving this Case Under the Privacy Act and FOIA**

Summary judgment is recognized as the vehicle by which the
Privacy Act and FOIA cases are commonly resolved. Gillin v.
I.R.S., 980 F.2d 819, 821 (1st Cir. 1992); see also Maynard v.
C.I.A., 986 F.2d 547 (1st Cir. 1993). Motions for summary
judgment are governed by Fed. R. Civ. P. 56, and as long as there
are no material facts at issue and no facts "susceptible to
divergent inferences bearing upon an issue critical to
disposition of the case," summary judgment is appropriate.
Alyeska Pipeline Serv. Co. v. EPA, 856 F.2d 309, 314 (D.C. Cir.
1988). Summary judgment may be granted on the basis of agency
affidavits if they are clear, specific, and reasonably detailed.
Gillin v. I.R.S., 980 F.2d at 821; Miller v. Dep't of State, 779
F.2d 1378, 1382 (8th Cir. 1985); Hemenway v. Hughes, 601 F. Supp.

1002, 1004 (D. D.C. 1985).[1]  In this case, the declaration that
comprises Defendant's Vaughn index indicates that there is no
genuine dispute as to any material fact and that judgment as a
matter of law is appropriate.

### B.   **The Privacy Act Does Not Mandate Disclosure**

The Privacy Act access provisions apply only to records that
are contained in a "system of records".  5 U.S.C. §552a(d).  A
system of records is described as "a group of any records under
the control of any agency from which information is retrieved by
the name of the individual or by some identifying number, symbol
or other identifying particular assigned to the individual."
5 U.S.C. §552a(d)(5).  "This qualifying language in the statute
reflects a statutory compromise between affording individuals
access to those records relating directly to them and protecting
federal agencies from the burdensome task of searching through
agency records for mere mention of an individual's name."
Betterworth v. FDIC, 248 "F.3d 386, 391 (5th Cir.).

---

[1] See also Lewis v. IRS, 823 F.2d 375, 380 (9th Cir. 1987);
Church of Scientology v. IRS, 792 F.2d 146, 152  (D.C. Cir.
1986), aff'd on other grounds, 484 U.S. 9 (1987); Campbell v.
Department of Health & Human Services, 682 F.2d 256, 265 (D.C.
Cir. 1982).

Numerous cases have discussed the concept of a "system of records" and have held that a system of records only exists when documents are keyed for retrieval by name or by a name-related identifier.  In Smiertka v. Department of the Treasury, 447 F. Supp. 221, 228, remanded on other grounds, 604 F.2d 698 (D.C. Cir. 1979), the Court stated that "[o]nly if information about individuals is maintained in groups of records keyed to the requester are agencies required to afford access."  See Savarese v. Department of HEW, 479 F. Supp. 304 (N.D. Ga. 1979) (correspondence file maintained only by sequential dates of letters does not constitute a system of records); Grachow v. Customs Service, 504 F. Supp. 632 (D.D.C. 1980); See also Boyd v. Department of the Navy, 709 F.2d 684, 687 (11th Cir. 1983) (a memorandum of a meeting of plaintiff's supervisors held not in a system of records where it was "kept in a random-type file and could only be retrieved by searching through the file"), and Baker v. Dep't of Navy, 814 F.2d 1381, 1384-85 (9th Cir. 1987) ("[A]n individual's ability to obtain access to a record…because of personal knowledge of its existence in a certain file, will not provide that individual with access to the record or to any remedies under the Privacy Act" unless the record is contained in a system of records.")  Only when "there is actual retrieval of

7

records keyed to individuals" in some way does the Privacy Act apply.  Henke v. Dep't of Commerce, 83 F.3d 1453, 1460 (D.C. Cir. 1996) (retrieval capability not sufficient; agency must in practice retrieve information using identifier); Gowan v. United States Dep't of the Air Force, 148 F.3d 1182, 1191 (10th Cir. 1998) (file marked "ethics" not a surrogate identifier for plaintiff; records not available under Privacy Act).

All three documents held from release were e-mails.  They were located on the computers of the various individuals asked to search for these documents.  None of the withheld records were located in a file or folder keyed to Plaintiff.  Although NUWCDIVNPT may "find" email records by using an electronic search feature, NUWCDIVNPT does not use the email system to systematically group, file, index, and retrieve information about individuals.  Declaration of Stephanie Carr, Attachment 1.  Since the agency records in this case are not maintained in a system of records, they are not subject to the provisions of the Privacy Act.

Also, as discussed more fully below, Document Numbers 50-52, either in whole or in part, are not responsive to Plaintiff's Privacy Act request.  Accordingly, they are properly withheld from release under the Privacy Act.

8

C.    **The Defendant Has Properly Invoked FOIA Exemption 5,**
      **To Justify Its Withholding of the Documents**

All three documents are properly withheld under exemption 5 of the FOIA.  As discussed more fully below, these documents are properly withheld from release based on a deliberative process privilege.  In addition, as noted above, and discussed more fully below, these documents (either in part or in whole), are properly withheld from release as they are not responsive to plaintiff's FOIA request.

### Deliberative Process Privilege

The FOIA requires federal agencies to make available to any person records that are properly requested, subject to certain specified exemptions.  The government has the burden of demonstrating that its withholding of records was proper under the Act.  5 U.S.C. § 552(a)(4)(B); U.S. Department of Justice v. Landano, 113 S.Ct. 2014, 2019 (1993).[2]

Exemption 5, 5 U.S.C. §552(b)(5), exempts from the FOIA's disclosure obligation "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency."  This exemption

---

[2] The district court's review in a FOIA case is de novo. 5 U.S.C. § 552(a)(4)(B).

encompasses documents that would normally be privileged in the civil discovery context. NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 148-49 (1975); see United States v. Webber Aircraft Corp., 465 U.S. 792, 800 (1984).  The three primary privileges incorporated into Exemption 5 are the deliberative process privilege, the attorney work product privilege, and the attorney-client privilege.  See Sears, 421 U.S. at 149.

The deliberative process privilege incorporated into exemption 5 protects advice, recommendations, and opinions that form the core of Government decision-making.  The purpose of the deliberative process privilege is to "prevent injury to the quality of agency decisions."  NLRB v. Sears, Roebuck & Co., 421 U.S. at 151.  Among the policy purposes that have been held to form the bases for this privilege are (a) to encourage open, frank discussions on matters of policy between subordinates and superiors, and (b) to protect against public confusion that might result from disclosure of reasons and rationales that were not in fact ultimately the grounds for an agency's action.  See Russell v. Department of the Air Force, 682 F.2d 1045, 1048 (D.C. Cir. 1982); Coastal States Gas Corp. v. Department of Energy, 617 F.2d 845, 866 (D.C. Cir. 1980).  As observed by the court in Coastal States Gas:

10

>The exemption thus covers recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency.  Documents which are protected by the privilege are those which would inaccurately reflect or prematurely disclose the views of the agency, suggesting as agency position that which is as yet only a personal position.  To test whether disclosure of a document is likely to adversely affect the purposes of the privilege, courts ask themselves whether the document is so candid or personal in nature that public disclosure is likely in the future to stifle honest and frank communication within the agency.

617 F.2d at 866.

The personal nature of the withheld documents also supports the conclusion that it they are deliberative.  See Coastal States Gas, supra.[3]  They contain virtually no factual information, and nothing in the documents even remotely suggest that they reflect either the agency's position or a basis relied upon by the decision-maker.  See Renegotiation Board v. Grumman Aircraft Engineering Corp., 421 U.S. 168, 186 (1975) ("The public is only marginally concerned with reasons supporting a [decision] which

---

[3]  Cf. U.S. Department of Justice v. Tax Analysts, 492 U.S. 136, 143-45 (1989) (term "agency records" in the FOIA is not so broad as to include personal materials in employee's possession, even though materials may be physically located at an agency); Judicial Watch, Inc. v. Clinton, 880 F. Supp. 1, 11 (D. D.C. 1995) (telephone logs, calendar markings, and personal staff notes were not agency records subject to disclosure under the FOIA).

11

an agency has rejected, or with reasons which might have been supplied, but did not supply, the basis for a [decision] which was actually adopted on a different ground")(quoting <u>NLRB v. Sears, Roebuck & Co.</u>, 421 U.S. at 152) (brackets in original); <u>cf</u>. <u>NLRB v. Sears, Roebuck & Co.</u>, 421 U.S. at 161 (holding that a pre-decisional document loses its deliberative process privilege only "if an agency chooses <u>expressly</u> to adopt [it] or incorporate [it] by reference")(emphasis in original).  Moreover, even where it is unclear whether a recommendation in fact provided the basis for a final decision, the recommendation should be protected. <u>Renegotiation Board</u>, 421 U.S. at 184-85; <u>Afshar v. Department of State</u>, 702 F.2d 1125, 1143 n. 22 (D.C. Cir. 1983); <u>see</u> <u>Greyson v. McKenna & Cuneo</u>, 879 F. Supp. 1065, 1069 (D. Co. 1995); <u>Ahearn v. United States Army Materials & Mechanics Research Ctr.</u>, 580 F. Supp. 1405, 1407 (D. Mass. 1984).

In order for the deliberative process to be invoked, two fundamental requirements must be met.  First, the communication must be pre-decisional.  <u>Jordan v. Department of Justice</u>, 591 F. 2d 753,774 (D.C. Cir. 1978).  Second, the communication must be advice, recommendation, or opinion, in contrast to facts.  <u>Vaughn v. Rosen</u>, 523 F. 2d 1136, 1143-44 (D.C. Cir. 1975).

The first requirement applies to the three documents

12

withheld, document numbers 50-52, because they are clearly pre-
decisional and not a final action.  They are discussions between
management officials regarding the options available on how to
handle procedurally a work assessment rating and form for
Plaintiff and where Plaintiff might be assigned once he returned
from an out-of-agency detail.

The second requirement is fulfilled because the
communications included advice, recommendations, and opinions.
These documents were created so that the decisionmakers could
benefit from each others advice and assistance.  The
recommendations contained therein were not necessarily followed
and they do not necessarily reflect the thoughts or opinions of
the agency.  Disclosure of deliberative information of the type
contained in these documents would severely inhibit the agency's
ability to conduct the open and frank discussion of important
issues.

The primary limitation on the deliberative process privilege
is that it is ordinarily inapplicable to purely factual matters,
or to factual portions of otherwise deliberative material.
Consequently, where otherwise deliberative documents contain
factual information, such information usually should be released.
e.g., EPA v. Mink, 410 U.S. 73, 87-88 (1973); Coastal States Gas

13

Corp., 617 F.2d at 867.  The government bears the burden of demonstrating that the privilege applies to all portions of the document.  See Church of Scientology Intern'l v. U.S. Department of Justice, 30 F.3d 224, 236-37 (1st Cir. 1994).  At the same time, the distinction between deliberative matter and factual information is not always clear-cut, and consequently factual information contained in a deliberative document should be examined "in light of the policies and goals that underlie" the privilege and "the context in which the materials are used." Wolfe v. Department of Health and Human Services, 839 F.2d 768, 774 (D.C. Cir. 1988); see also Providence Journal Co. v. United States Department of the Army, 981 F.2d 552, 561-62 (1st Cir. 1992); National Wildlife Federation v. United States Forest Service, 861 F.2d 1114, 1119 (9th Cir. 1988).  A description of "selective facts" may itself be part of an agency's deliberative process, in which case the description is entitled to the same protection afforded purely deliberative materials.  Mead Data Central, Inc. v. United States Department of the Air Force, 566 F.2d 242, 256 (D.C. Cir. 1977); Providence Journal Co., supra at 562 (revealing Inspector General's factual findings would divulge substance of related recommendations); Lead Industries Ass'n v. OSHA, 610 F.2d 70, 85 (2nd Cir. 1979)(disclosing factual segments

14

of summaries would reveal deliberative process by "demonstrating which facts in the massive rule-making record were considered significant to the decisionmaker").

In the present case, the declaration submitted by Defendant indicates that there is no segregable factual information contained in the electronic messages. In addition, even if the Court were to conclude that there is some meaningful factual information, such information is so inextricably connected to the deliberative material that its disclosure would expose or cause harm to the agency's deliberations. Providence Journal, 981 F.2d at 562; see Brownstein Zeidman & Schomer v. Department of the Air Force, 781 F. Supp. 31, 36 (D. D.C. 1991)(release of summaries of negotiations would inhibit free flow of information as "summaries are not simply the fact themselves"); Jowett, Inc. v. Department of the Navy, 729 F. Supp. 871, 877(D.D.C. 1989)(manner of selecting and presenting even most factual segments of audit reports would reveal process by which agency's final decision is made).

An in camera review of the electronic messages will show that the communications are so personal and deliberative as to cause a chilling effect on the type of free and frank intra-agency communication that the privilege is intended to foster.

In short, all the emails were properly treated as pre-decisional and deliberative documents. To hold otherwise would exalt form over substance.

**Document Number 50**, dated January 25-31, 2002, is a two-page series of four e-mails between management officials at NUWCDIVNPT. The first three e-mails and part of the fourth e-mail deal with Plaintiff's proposed reassignment and evaluation. These e-mails were properly withheld from release, as they are not responsive to Plaintiff's FOIA request.

Even if these e-mails relating to the proposed reassignment and evaluation are deemed responsive, they were properly withheld from release under exemption (b)(5) because they are deliberations between management officials and the Human Resources office on proposed courses of action and the possible pros and cons that might result. Release of this type of information would harm the agency's decision-making process by stifling the free exchange of ideas between agency officials.

A portion of the fourth e-mail is responsive to Plaintiff's FOIA request as it mentions Plaintiff's Office of Special Counsel (OSC) complaint. However, it contains strategy discussions between management officials at NUWCDIVNPT who are seeking further guidance before addressing the accusations that are

16

contained in Plaintiff's attorneys' letter to COMNAVSEA.  Release
of such information could cause harm to the agency's decision-
making process by curtailing management's ability to explore a
possible course of action in advance.  Therefore, that e-mail was
properly withheld under the deliberative process privilege, as
discussed more fully, above.

**Document Number 51**, dated January 25-31, 2002, is a one-
page series of three e-mails between management officials at
NUWCDIVNPT.  The three e-mails are the second, third and fourth
email in Document Number 50.  The reasons for withholding their
release in Document Number 50 apply here.

**Document Number 52**, dated January 31, 2002, is a one-page
series of four e-mails between management officials at
NUWCDIVNPT.  The first and second e-mails are the third and
fourth e-mails in Document Number 50.  The reasons for
withholding their release in Document Number 50 apply here.  The
third and fourth e-mails are in response to the first two e-
mails.  They do not mention Plaintiff's OSC complaint.  These e-
mails are not responsive to Plaintiff's FOIA request, and
therefore, were properly withheld from release.

Even if these emails relating to the proposed reassignment
and evaluation were deemed responsive to the FOIA request, they

17

were properly withheld from release under exemption (b)(5)
because they are deliberations between management officials and
the Human Resources office on a proposed course of action and the
possible repercussions that may result if certain action were not
taken.  Release of this type of information would harm the
agency's decision-making process by stifling the free exchange of
ideas between agency officials.

D.    There Is No Meaningful Segregable Factual Information
      In the Three E-mails, and None That Can Be Released
      Without Disclosing Deliberative Processes

The deliberative process privilege is ordinarily
inapplicable to purely factual matters.  Consequently, where
otherwise deliberative documents contain factual information,
such information usually should be released.  E.g., EPA v. Mink,
410 U.S. 73, 87-88 (1973); Coastal States Gas Corp., 617 F.2d at
867.  The government bears the burden of demonstrating that the
privilege applies to all portions of the document.  See Church of
Scientology Intern'l v. U.S. Department of Justice, 30 F.3d 224,
236-37 (1st Cir. 1994).

At the same time, the distinction between deliberative
matter and factual information is not always clear-cut, and
factual information contained in a deliberative document should
be examined "in light of the policies and goals that underlie"

18

the privilege and "the context in which the materials are used." Wolfe v. Department of Health and Human Services, 839 F.2d 768, 774 (D.C. Cir. 1988); see also Providence Journal Co. v. United States Department of the Army, 981 F.2d 552, 561-62 (1st Cir. 1992); National Wildlife Federation v. United States Forest Service, 861 F.2d 1114, 1119 (9th Cir. 1988). A description of "selective facts" may itself be part of an agency's deliberative process, in which case the description is entitled to the same protection afforded purely deliberative materials. Mead Data Central, Inc. v. United States Department of the Air Force, 566 F.2d 242, 256 (D.C. Cir. 1977); Providence Journal Co., supra at 562 (revealing Inspector General's factual findings would divulge substance of related recommendations); Lead Industries Ass'n v. OSHA, 610 F.2d 70, 85 (2nd Cir. 1979)(disclosing factual segments of summaries would reveal deliberative process by "demonstrating which facts in the massive rule-making record were considered significant to the decisionmaker").

In the present case, the declaration submitted by Defendant indicates that there is no segregable factual information contained in the electronic messages. An in camera review of the documents themselves confirms this to be the case. Moreover, to

the extent there is any factual information, it is so insignificant as to be meaningless if released.

In addition, even if the Court were to conclude that there is some meaningful factual information, such information is so inextricably connected to the deliberative material that its disclosure would expose or cause harm to the agency's deliberations. <u>Providence Journal</u>, 981 F.2d at 562; <u>see</u> <u>Brownstein Zeidman & Schomer v. Department of the Air Force</u>, 781 F. Supp. 31, 36 (D. D.C. 1991)(release of summaries of negotiations would inhibit free flow of information as "summaries are not simply the fact themselves"); <u>Jowett, Inc. v. Department</u> <u>of the Navy</u>, 729 F. Supp. 871, 877 (D. D.C. 1989)(manner of selecting and presenting even most factual segments of audit reports would reveal process by which agency's final decision is made).

Based on the foregoing, Documents 50-52 are properly withheld in their entirety based on exemption 5 of the FOIA.

E. The Defendant Has Properly Invoked the Personal Privacy Protection in Exemption 6 of the FOIA to Justify Withholding Of Names

All third party names in Document Numbers 50-52 are exempt from disclosure under subsection (b)(6) of the FOIA. Exemption (b)(6) protects from disclosure "personnel and medical files and

20

similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy.  In <u>Department of State v. Washington Post</u>, 456 U.S. 595 (1982), the Supreme Court opined that Congress intended a broad interpretation of the "personnel files and medical files and similar files" language of exemption 6, holding that any files about a person qualified.

Once the threshold requirement of exemption 6 is met, the focus of inquiry turns on whether disclosure of the records would constitute a "clearly unwarranted invasion of personal privacy." The Supreme Court's decision in <u>Department of Justice v. Reporters Committee for Freedom of the Press</u>, 489 U.S. 749 (1989), set out a step-by-step process for balancing privacy-protection interests.  The first step is to determine whether a viable personal privacy interest exists involving an identifiable, living person.  <u>Department of the Air Force v. Rose</u>, 425 U.S. 352, 372 (1976).  The privacy interest in this instance is considered to be the names of civilian Department of Defense personnel.  Since September 11, 2001, the Navy is especially sensitive to the fact that information, which, at first blush, might seem innocuous, could, in the wrong hands, have serious if not deadly repercussions.  As a result of the increased security awareness demanded in this time of national

21

By:    _Anita Johnson_
ANITA JOHNSON
Assistant U.S. Attorney
Ste. 9200, Moakley U.S. Courthouse
One Courthouse Way
Boston, Mass. 02210
(617)748-3266

I hereby certify that a true copy of the foregoing document was
served upon Peter L. Duffy by first class mail, postage prepaid,
on this tenth day of December, 2004.

_Anita Johnson_

23

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

PETER L. DUFFY,                    )
                                   )
        Plaintiff,                 )
                                   )
        v.                         )    Civil Action No. 04-10547 —LPC
                                   )
DEPARTMENT OF NAVY,                )
                                   )
        Defendant.                 )
_____)

## DECLARATION OF STEPHANIE L. CARR

I, Stephanie L. Carr, declare the following to be true and correct:

1.   I am the Head of the Freedom of Information and Privacy Program Division of the Naval Sea Systems Command (NAVSEA). NAVSEA is the central activity within the Department of the Navy for designing, engineering, integrating, building, and procuring naval ships, shipboard weapons and combat systems.

2.   I make the statements herein on the basis of personal knowledge as well as on information acquired by me in the course of performing my official duties.

3.   I am the individual immediately responsible for responding to requests for NAVSEA Headquarters (HQ) records that are made pursuant to the Freedom of Information Act, 5 U.S.C. § 552 and Privacy Act, 5 U.S.C. §552a (FOIA/PA).

4.   I am also the individual responsible for overseeing the FOIA/PA program at NAVSEA Shore Activities.

1

5. As a result of my duties, I am familiar with the FOIA/PA request submitted by plaintiff.

6. The purpose of this declaration is to provide the Court and plaintiff with the factual justification for NAVSEA's withholding a small amount of information.

7. By electronic mail submission on February 28, 2002, plaintiff submitted a FOIA/PA request to NUWCDIVNPT. Plaintiff's FOIA/PA request sought access to the following records:

> a) Electronic mail (email) sent to the Commander, NUWCDIVNPT from plaintiff on or about 1 April 2001;
>
> b) Email sent to the Commander, NUWCDIVNPT from plaintiff on or about 10 July 2001;
>
> c) Any email that the Commander, NUWCDIVNPT sent, either forwarding or referencing the a) or b) emails identified above, to anyone within the Department of the Navy (DON); and,
>
> d) Any correspondence/record to any employee within the DON, in reference to plaintiff's Naval Inspector General Complaint, Office of Special Counsel Complaints, utilization of leave, placement in a Leave Without Pay Status (LWOP), denial of advance leave, 2001 Performance Evaluation, and 2001 Performance Award.

2

8.   On January 9, 2004, NAVSEA issued a final response to plaintiff's FOIA/PA request.  NAVSEA considered the request under the Privacy Act and determined that it did not apply because the records forwarded to NAVSEA for processing were not normally retrieved using a personal identifier.  NAVSEA also considered the request under the FOIA and determined that eight pages were appropriate for release in their entirety and that two additional pages, except for names of third parties, were appropriate for release.  Finally, NAVSEA determined that the remaining 75 pages in their entirety were exempt from mandatory disclosure under subsections (b)(5) and (b)(6) of the FOIA.

9.   The January 9, 2004 partial denial letter advised plaintiff of his right to file an administrative appeal to the General Counsel of the Navy within 60 calendar days.

10.   On January 24, 2004, plaintiff filed an administrative appeal, appealing NAVSEA's January 9, 2004 partial denial letter.  Plaintiff specifically appealed (1) NAVSEA's determination that the Privacy Act does not apply, and (2) NAVSEA's determination that FOIA exemptions (b)(5) and (b)(6) protected each of 55 documents, consisting of 75 pages that were withheld in their entirety.

11.   On March 1, 2004, the Office of the General Counsel of the Navy responded to plaintiff's FOIA/PA appeal.  The Office of the General Counsel concluded (1) that plaintiff was not entitled to access under the Privacy Act; (2) that responsive information was properly withheld under the attorney-client privilege, the attorney work-product and the deliberative

process privileges of exemption (b)(5); (3) that portions of the responsive information were properly withheld under exemption (b)(6); and (4) that segregable portions of three documents were appropriate for disclosure, and released those portions to the plaintiff.

12. On or about November 4, 2004, the Navy released to plaintiff 52 of the 55 previously withheld documents.

13. Three documents, consisting of six pages, were not entirely disclosed to plaintiff. These documents are printed copies of emails that were sent from and to or between management officials at Naval Undersea Warfare Center Division Newport (NUWCDIVNPT).

14. These documents are not subject to the access provisions of the Privacy Act. Moreover, these documents were not even responsive to the plaintiff's PA/FOIA request, and, as such, are properly withheld from release. In addition, these documents are exempt from disclosure under exemption (b)(5) of the FOIA.

15. The Privacy Act access provisions apply only to records that are contained in a system of records. 5 U.S.C. 552a(d). A system of records is described as "a group of any records under the control of any agency from which information is retrieved by the name of the individual or by some identifying number, symbol or other identifying particular assigned to the individual." 5 U.S.C. 552a(a)(5).

16. Although NAVSEA may "find" email records by using an electronic search feature, NAVSEA does not use the email system

to systematically group, file, index, and retrieve information about individuals.

17. It is my understanding that the emails withheld from release were located on the computers of the various individuals tasked to search for these documents. However, none of the denied records were located in a folder or a system of records cued to the plaintiff. See Declaration of Gary Steigerwald, Attachment 1. Thus, they are not subject to the Privacy Act. 5 U.S.C. §552a.[1]

## DOCUMENT NUMBERS 1-3

18. Document Numbers 1-3 relate to two issues, neither of which are responsive to plaintiff's FOIA request. They concern: (1) Whether Plaintiff's detail from Code 40 to Code 70 should become permanent, and (2) Whether Code 40 or Code 70 should evaluate plaintiff's performance. Code 40 was where plaintiff was permanently assigned; Code 70 was where he was detailed to for much of the performance period.

19. **Document Number 1** (number 50), dated January 25-31, 2002, is a two-page series of four emails between management officials at NUWCDIVNPT. The first three emails and part of the fourth email deal with plaintiff's proposed reassignment and

---

[1] Several of the documents have the name "Gary Steigerwald" on the top of the document. Mr. Steigerwald is the head of the FOIA office at NUWCDIVNPT, and coordinated the responses to plaintiff's FOIA request. When individuals at NUWCDIVNPT located emails responsive to plaintiff's FOIA request, rather than print them out and deliver them to Mr. Steigerwald, they forwarded them, by email to Mr. Steigerwald. When Mr. Steigerwald printed out these emails from his computer, his name then appeared at the top of the document. Mr. Steigerwald was never a "copy to" on any of these documents. See declaration of Gary Steigerwald, Attachment 1.

evaluation.   These emails are properly withheld from release, as they are not responsive to plaintiff's FOIA request.

20.   Even if these emails relating to the proposed reassignment and evaluation are responsive to the FOIA request, they are exempt from release under exemption (b)(5) because they are deliberations between management officials and the HR office on a proposed course of action and the possible repercussions that may result if certain action were not taken.   Release of this type of information would harm the agency's decision-making process by stifling the free exchange of ideas between agency officials.

21.   **Document Number 2** (51), dated January 25-31, 2002, is a one-page series of three emails between management officials at NUWCDIVNPT.   The three emails are the second, third and fourth email in Document Number 1.   The reasons for withholding their release in Document Number 1 apply here.

22.   **Document Number 3** (52), dated January 31, 2002, is a one-page series of four emails between management officials at NUWCDIVNPT.   The first and second emails are the third and fourth emails in Document Number 1.   The reasons for withholding their release in Document Number 1 apply here.   The third and fourth emails are in response to the first two emails.   They are in response to issues relating to plaintiff's proposed reassignment and evaluation, but do not mention plaintiff's OSC complaint.   These emails are not responsive to plaintiff's FOIA request, and therefore, are properly withheld from release.

23.   Even if these emails were responsive to the FOIA request, they fall within exemption (b)(5) because they are deliberations between management officials and the HR office on a proposed course of action and the possible repercussions that may result if certain action were not taken.  Release of this type of information would harm the agency's decision-making process by stifling the free exchange of ideas between agency officials.


I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.


_____
STEPHANIE L. CARR

Executed this __16th__ day of November 2004.

7

## DECLARATION

My name is Gary A. Steigerwald.  I am the Freedom of Information Act (FOIA) Coordinator for the Naval Undersea Warfare Center Division, Newport (NUWCDIVNPT) and have served in that position since approximately 1985.

On March 4 2002, I received an e-mail from Mr. Peter Duffy dated February 28, 2002.  In his e-mail, Mr. Duffy requested a copy of various records pursuant to the Privacy and FOIA Acts.

In response to Mr. Duffy's e-mail, I asked NUWCDIVNPT's Computer/Information Services Department to capture all e-mail in the current and back-up files from Mr. Duffy to Captain Bloomfield; any e-mail sent by Captain Bloomfield to, or containing reference to Mr. Duffy.  To accomplish this, Captain Bloomfield's mailbox was searched on March 7, 2002 for all mail that listed "Duffy" in the SUBJECT and/or MESSAGE BODY areas.  The oldest backup we had (February 1, 2002) was then searched using the same criteria.  Mr. Duffy's mailbox was searched on March 8, 2002 for any e-mail to Captain Bloomfield.  Mr. Duffy's mailbox was restored from our oldest backup (February 1, 2002) and again searched for any e-mail to Captain Bloomfield.  I also verified with Captain Bloomfield that he did not have any e-mails archived on his hard drive related to Mr. Duffy.  In the course of transferring retrieved emails from electronic form to paper copy most of the records acquired my name in the header as they were printed off my computer.

In regards to correspondence related to Mr. Duffy's Inspector General (IG) complaint, I sent an e-mail to all personnel I believed might have a responsive record.  As I had no privileges regarding who the IG may have talked to, and Mr. Duffy cited no one in particular in his request, records were requested of Captain Patrick Bloomfield, NUWC Division Newport Commander, Mr. Joseph Murphy, Mr. James Wright and Mr. Fred Hussey, all of the Human Resources Effectiveness Department (HRO); Dr. David Dence, and Mr. John Conti of the Missile and Platform Systems Department; and Mr. Kenneth Nelligan, Counsel.

After receiving responses from various individuals, I first analyzed what I received to determine whether they were responsive to Mr. Duffy's request.  I then separated what was responsive and releasable from what was responsive and exempt from release.

On May 10, 2002, I notified Mr. Duffy by e-mail that the releasable records were available for pick-up at my office.

Via letters dated May 15, and June 19, 2002, I forwarded the responsive records that I believed were exempt from release to the Commander, Naval Sea Systems Command (NAVSEA) and recommended that Mr. Duffy's request be denied as to those records.

To the best of my knowledge and belief, none of the records that I forwarded to NAVSEA came from a file identified by Mr. Duffy's name or from a system of records wherein the records were retrievable by a personal identifier.

My understanding from talking to the individuals who provided copies of e-mails is that they each conducted a "word search" of their accounts and that none of these had a folder identified by a personal identifier associated with Mr. Duffy.

I declare under penalty of perjury that the foregoing is true and correct. Executed on July 1, 2004 in Newport, R.I.


GARY A. STEIGERWALD