UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

PETER L. DUFFY,
    Plaintiff

v.    Civ. No. 04-cv-10547-LTS

DEPARTMENT OF THE NAVY,
    Defendant.

MEMORANDUM AND ORDER

July 1, 2005

SOROKIN, M.J.

Plaintiff Peter Duffy ("Duffy") is a former employee of the Navy who requested documents from the Naval Sea Systems Command (NAVSEA) division of the Navy under the Freedom Of Information Act ("FOIA"), 5 U.S.C.§ 552 (2002) and the Privacy Act, 5 U.S.C.§ 552a (2004)("PA").  The Navy produced some documents and withheld others, claiming that the withheld documents were exempt from mandatory disclosure under two of FOIA's nine statutory exemptions.  Now before the Court are the parties' cross-motions for summary judgment, in which Duffy and the Navy dispute whether four withheld pages are properly redacted and whether the Navy's actions throughout this process were arbitrary and capricious.

**I.**    **BACKGROUND**

The facts of this matter are generally undisputed.  Peter Duffy became an employee at the Naval Undersea Warfare Center ("Warfare Center") on January 31, 1998. Compl. at ¶ 5.  Duffy attended business school at the Massachusetts Institute of Technology between June 1999 and June 2000, then returned to the Warfare Center,  allegedly to a demoted position. Compl. at ¶ 6.

1

Believing his new placement was improper, Duffy filed a "protected disclosure" with the NAVSEA Inspector General in August of 2000, in which he alleged "that the three most senior Senior Executive Service (SES) members at NAVSEA unfairly removed the Plaintiff from his position, abused their positions as well as misused government resources." Compl. at ¶ 7.

Duffy issued his FOIA/PA requests to the Navy on March 15, 2002. Compl. at ¶ 12. NAVSEA produced some documents but initially refused to release 75 pages of information, claiming that the materials were privileged as "inter- and intra- agency" pages that reveal the deliberative decision-making process of the agency. 5 U.S.C.§ 552(b)(5) ("Exemption 5"). The agency further declared that the names of any persons mentioned in the 75 pages were exempt because disclosing the names would violate the privacy interests of the identified individuals under 5 U.S.C.§ 552(b)(6) ("Exemption 6").

Duffy appealed NAVSEA's FOIA and PA determinations to the Office of the General Counsel of the Navy. After his appeal was denied he filed this suit pro se. Duffy's complaint sought release of the 75 withheld pages, as well as declaratory and injunctive relief under 5 U.S.C.§ 552 (a)(4)(F), based on the Navy's allegedly arbitrary and capricious handling of his requests for information. During this litigation, the Navy produced the 75 disputed pages, though four of those pages remained heavily redacted. Pl. Mem. Supp. of Summ. J., Ex. A. After reviewing the production, Duffy conceded that his Privacy Act claims did not apply to any pages, but continued to dispute the Navy's right to withhold the redacted portions of four pages. Pl. Resp. to Def's Mot. Summ. J. at pg. 1.

The four pages that remain in dispute arose out of the following context: during 2001, Duffy was permanently assigned to "code 40"; however, he worked much of the year under a

"code 70." Aff. of Stephanie Carr, Head of the Freedom and Information and Privacy Program Division of NAVSEA ("Carr Aff.") at ¶ 18. In January 2002, Duffy's multiple codes created some confusion among managers and the Human Resource office ("HR") about where Duffy should be permanently assigned and which code's guidelines should be used to evaluate him going forward, in light of his prior work. Duffy's situation was further complicated by the allegations that he filed with the NAVSEA Inspector General; Warfare Center personnel were unsure who could make personnel decisions about Duffy without impacting those claims or leading to additional ones. This confusion led to an email discussion among "management officials and the HR office" about how to assign and evaluate Duffy. Carr Aff. at ¶ 23. Printed versions of those emails comprise the four disputed pages. Pl.'s Mem. Supp. Summ. J., Ex. A, pgs. 69-71.

## II.     DISCUSSION

The Court will grant a motion for summary judgment if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits...show that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the burden of demonstrating that "there is an absence of evidence to support the non-moving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554 (1986). Moreover, the Court is "obliged to view the record in the light most favorable to the nonmoving party, and to draw all reasonable inferences in the nonmoving party's favor." LeBlanc v. Great American Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993).

Both parties move for summary judgment here, requiring the court to "evaluate each motion separately, being careful to draw inferences against each movant in turn." Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990). Under FOIA, however, the Navy bears " the ultimate burden of proof" at trial of showing that any withheld pages are exempt from disclosure; Wilkinson v. Chao, 292 F. Supp. 2d 288, 291 (D. N. H. 2003). Thus, the Navy must prove "that each document that falls within the class requested either has been produced, is unidentifiable or is wholly exempt from the [FOIA's] inspection requirements." Gillin v. Internal Revenue Service, 980 F. 2d 819, 821 (1st Cir. 1992) quoting Perry v. Block, 684 F.2d 121, 126 (D.C. Cir. 1982).

**A. Duffy's Claim to the 75 Pages**

Duffy requested that the Navy be ordered "to release all seventy-five pages of withheld records, unredacted." Compl., pg. 7. The parties agree that the Navy produced 71 of 75 previously withheld pages in an unredacted form during this litigation. Pl. Mem. Supp. of Summ. J., Ex. A. Accordingly, the Court grants the Navy's Motion for Summary Judgment in regards to production of these 71 pages. Gillin, 980 F. 2d at 821.

Duffy correctly notes a discrepancy in the Navy's representations of how many pages remain at issue, however. The Navy refers to the redacted materials as "three pages, consisting of six pages." Carr Aff. at pg. 4; Def.'s Mot. Summ. J., pgs. 1, 4.[1] The Court's review of the materials, however, reveals three pages consisting of only four (not six) redacted pages. See Pl.'s

---

[1] Un-redacted versions of the disputed records have been submitted for in camera review, and have also been shown to plaintiff solely for the purpose of litigating these motions. See Zweibon v. Mitchell, 516 F.2d 594, 642 (D. C. Cir. 1975) (noting that "the court may examine the contents of ...agency records in camera to determine whether such records or any part thereof shall be withheld" if discoverability is placed in issue.)

Mem. Supp. Summ. J., Ex. A, pgs. 69- 72.[2]  Accordingly, the Navy is ordered to clarify this discrepancy.

As to the four redacted pages, the Court reviews agency decisions to withhold information *de novo*.  5 U.S.C.§ 552 (a)(4)(B); Envt'l Prot. Agency v. Mink, 410 U.S. 73, 79, 93 S.Ct. 827, 832 (1973).  FOIA requires "each agency, upon any request for records" to "make the records promptly available to any person" unless the agency can show that any of nine statutory exemptions excludes the records from mandatory disclosure. 5 U.S.C.§ 552(a)(3)(A).  FOIA reflects a policy of "broad disclosure" by creating a presumption that requested records be produced, and by requiring any agency that would withhold any information to bear the  "burden of demonstrating the applicability of a claimed exemption."  Church of Scientology Int'l. v. United States Dep't of Justice,  30 F.3d 224, 228 (1st Cir. 1994).  Thus, the Navy bears the burden of showing that Exemptions 5 and 6 apply to the text redacted from these four pages.  See id.

As a threshold matter, the Navy argues the redacted portions are not responsive to Duffy's requests.  Duffy requested various items, including any information about his 2000- 2001 performance evaluation.  Compl., Ex. A.  The four pages discuss how to categorize Duffy in 2002, in light of his prior performance and categorization.  This discussion falls generally within his request, and as FOIA "presumes public access to agency information," these pages are responsive.  American Fed'n of Gov't  Employees v. United States Dep't of Health and Human Services, 63 F. Supp.2d 104, 106 (D. Mass. 1999); see Gillin, supra.

---

[2] 75 pages, including unredacted versions of the disputed pages, were submitted to the Court with handwritten circled numbers marked in the bottom left corner, from 1-75, which numbers the Court uses here.

Next, the Navy argues that the pages are properly withheld under the deliberative process privilege encompassed by FOIA's Exemption 5, which exempts from mandatory disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." Under Exemption 5, agencies may withhold "advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 150, 95 S.Ct. 1504, 1516 (1975). Records relating to any "deliberative function entrusted to the agency" can be withheld so long as the agency shows that the information is both 1) predecisional and 2) deliberative. See Providence Journal Co. v. United States Dep't of the Army, 981 F.2d 552, 560 (1st Cir. 1992) (discipline and/or prosecution decisions are within deliberative process exemption). The four redacted pages meet the requirements of this exemption.

In the emails, the authors debate what Duffy's future assignment ought to be and which official can make that decision; the written discussion makes clear that no final decision has been reached. See Carr Aff. at ¶ 23. Moreover the emails indicate that other, apparently higher, officials, rather than the authors of the emails, would make the final agency decision in the future. These messages clearly pre-date any final decision regarding Duffy's classification, and are thus "pre-decisional communications, which are privileged" rather than "communications made after the decision and designed to explain it, which are not." Sears, Roebuck & Co., 421 U.S. at 152, 95 S.Ct. at 1517.

The emails are also deliberative. Prior to the email exchange, management and the HR office each had only a portion of the information needed to decide where Duffy should be

assigned. See Carr Aff. at ¶ 18. A comprehensive understanding of Duffy's prior work, current assignment and the status of his whistleblower claims was "essential" to that decision; this discussion allowed the necessary information to be exchanged and collectively considered. See Providence Journal Co., 981 F.2d at 560. The emails also reflect the "personal opinion" of the authors rather than any "agency policy" or decision; the authors' use phrases like "my advice would be" "[i]n my opinion" and "I feel that." Id. at 561 (Army Inspector General's subjective factual evaluation and personal recommendations for disciplining soldiers were exempt from disclosure under Exemption 5). Moreover, the emails comprise a discussion about how to handle a situation that is *outside* of usual agency policy, rather than a statement of established protocol. See Carr Aff. at ¶ 18. These messages reveal precisely the "consultative functions" of an agency that Congress intended to protect "by maintaining the confidentiality of the give-and-take that occurs among agency members in the formulation of policy." National Wildlife Fed'n v. United States Forest Service, 861 F.2d 1114, 1117 (9th Cir. 1988). Thus, the redacted portions of these four pages are exempt from disclosure except as discussed below.

The Navy also claims that the "third party names" are further exempt from mandatory disclosure by FOIA Exemption 6, which excludes "personal and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy" from mandatory disclosure. Because the court has already ruled that the deliberative process privilege protects the content of the emails, including the names therein, this argument pertains only to the names of the civilian Department of Defense personnel receiving or sending the emails. The Navy claims a privacy interest solely in the mere fact that these individuals work for the Defense Department. This claimed interest is vitiated by the fact that the unredacted portions

of the four pages of emails at issue reveal the very names the Navy seeks to protect: there can be no expectation of privacy in names that the Navy itself revealed on these pages.[3]  Moreover, the Navy points to nothing specific about these individuals, their roles at the Defense Department or the nature of the information in these emails that would raise particular privacy concerns.  Cf. United States Dep't of State v. Washington Post Co., 456 U.S. 595, 602, 102 S.Ct. 1957, 1962 (1982) (finding that compilation of otherwise public information from variety of sources in citizenship files entitled to privacy protection under Exemption 6).  Unlike the disclosure of a person's date of birth, place of birth, date of marriage, employment history or other "highly personal" information that, if found in a government file, might cause "injury and embarrassment," the mere fact of a civilian's employment by the United States Government, in this case with the Navy, seems not to raise the same concerns.  Washington Post Co., 456 U.S. at 599, 102 S.Ct. at 1960.  Accordingly, on the record before this court, the Navy failed to meet its burden of proof as to the applicability of Exemption 6 to the names of the civilian employees writing and receiving the four pages of emails.

### B.  Duffy's Claim of Arbitrary Actions by the Navy

Duffy claims the Navy "acted arbitrarily or capriciously" in response to his requests for information and seeks remedy for the agency's alleged bad faith under 5 U.S.C. § 552(a)(4)(F).  He points to three separate facts to support this claim.

---

[3] Despite the Navy's redactions of names within the body of the messages, the unredacted portions of the emails identify the discussion participants and their role as authors and/or recipients, because the address sections of the messages are not redacted, e.g. Pl.'s Mem. Supp. Summ. J., Ex. A, pg. 69.

First, Duffy complains that the Navy took "over two years" to resolve his FOIA request, thus "willfully and materially" exceeding the statutory time limits established by 5 U.S.C. § 552(a)(6). Compl. at ¶ 32. FOIA requires an agency to decide whether to "comply with [a FOIA] request" and "notify the person making such request of such determination and the reasons therefor" within 20 business days of receiving the request 5 U.S.C. §552(a)(6)(A)(i). Yet, during those two years, Duffy received 3 decisions from the Navy: (1) a partial decision from the Warfare Center on May 10, 2002, releasing to him certain pages and explaining that higher authority was needed to review and rule on any potentially exempt documents; (2) a full decision on his entire request from NAVSEA on January 9, 2004, releasing additional pages; and, after an appeal, (3) a final decision from the Naval Office of General Counsel on March 1, 2004. Compl., Exs. B, K, M. Along the way, Duffy made inquiries of the Navy regarding the status of his requests. Compl., Exs. D, F, etc. The Navy promptly responded to each request with emails, letters and/or formal decisions, issuing a response anywhere from the same day it received a request, to within two weeks of receiving one. Compl., Exs. E, J, etc. Moreover, the Navy's responses were informative rather than cursory; they told Duffy of the status of his case, i.e. that his was "58 in line for processing out of 227 cases, " and also warned him that future delays might occur because "NAVSEA (including the FOIA officer) is currently undergoing a downsizing." Compl. Ex. I.

On this record, the Navy's delay was not willful, nor material to bad faith. "Delay alone is significant only to the extent that evidence shows that the delay resulted from bad-faith refusal to cooperate." Maynard v. Central Intelligence Agency, 986 F. 2d 547, 564 (1st Cir. 1993)

quoting <u>Miller v. United States Dept. of State</u>, 779 F.2d 1378, 1386 (8th Cir.1985).[4] Despite its delay, the Navy was not engaged in a "bad faith refusal to cooperate;" rather, throughout this two-year period, the Navy communicated with Duffy about the process of his case and issued substantive decisions on it. <u>See</u> <u>id.</u> FOIA recognizes that an agency may require additional time "in unusual circumstances," including the need to seek "consultation" among "two or more components of the agency." 5 U.S.C. § 552(a)(6)(B). This is precisely what happened here; the initial satellite agency which received Duffy's request lacked "denial authority" and so had to consult with higher command regarding potentially exempt documents. <u>See</u> Compl., Ex. B. While the statute outlines a shorter time extension, it clearly recognizes that the time limits may be unworkable in circumstances of inter-agency consultation. <u>See</u> 5 U.S.C. § 552(a)(6)(B). On this record, the two years that elapsed between Duffy's initial request and the Navy's final decision is not evidence of arbitrary or capricious activity, where the Navy communicated its process to Duffy and provided reasoned explanations for its delay and the withholding of the documents, the agency's delay.

Next, Duffy contends that the Navy's decision to turn over most of the 75 pages once he filed suit evidences bad faith. As discussed above, the 4 pages that remain redacted are exempt from disclosure under Exemption 5; accordingly, withholding them is not evidence of bad faith.

---

[4]The <u>Miller</u> Court further noted: "Whether the backlog and delays result from understaffing or from misapplication of resources or from bureaucratic inertia is a matter of concern for State Department managers, but it is immaterial to our decision here, for none of these things by itself would constitute bad faith as to this plaintiff's request. ...Appellant has shown us the delay and has concluded that it resulted from bad faith. However, that delay, when considered in the light of the ultimate disclosure of the documents which Miller requested and the State Department's tardy but eventually complete accounting of its search, is not enough...." 779 F. 2d at 1386.

The 71 pages that the Navy eventually opted to disclose were also appropriately withheld; thus, the Navy's actions regarding these pages similarly do not evidence any bad faith. These pages reveal discussions about how to respond to Duffy's attorneys, how to handle Duffy's OSC complaints, and how to handle inter-agency personnel matters relating to Duffy in light of his complaints. Much of these pages contain discussions that include an attorney for the Navy, or discuss that attorney's advice. The 71 pages are within the attorney-client, attorney work-product and/or deliberative privileges encompassed within Exemption 5, and so were properly withheld. See, generally, Providence Journal Co., 981 F.2d at 552. The decision to disclose exempt pages is a discretionary one vested with the Navy. Chrysler Corp. v. Brown, 441 U.S. 281, 293, 99 S.Ct. 1705, 1703 (1979). Where an agency is entitled to withhold documents, but opts instead to produce them, such production is not evidence of bad faith. See id.

Duffy argues that the Navy failed to make reasonable efforts to segregate non-exempt information from the pages that were initially withheld. Under 5 U.S.C. § 552(b), an agency must provide "any reasonably segregable portion" of an otherwise exempt record. Mink, 410 U.S. at 87. Non-exempt material can only be withheld if it is "so interspersed with exempt material" that revealing the non-exempt material would disclose exempt material or would "impose an inordinate burden" on the agency. Lead Industries Ass'n v. Occupational Safety and Health Adm., 610 F.2d 70, 86 (2d Cir. 1979). "Even when requested material is...factual," however, "the courts have held it exempt where they were convinced that disclosure would 'expose an agency's decisionmaking process."Providence Journal Co., 981 F.2d at 562. These 71 pages contain discussions which include factual information, such as the fact that Duffy filed complaints with the OSC; disclosure of these portions of the records would reveal the agency's

decisionmaking process, however, because the factual information is "inextricably intertwined" with the Navy's deliberations about Duffy's OSC complaints and communications amongst the Navy and its attorneys respecting how to handle the complaints. See id. Accordingly, the Navy properly withheld non-exempt material because such material was intertwined with privileged information. Id. That it later elected to produce these pages is not evidence of bad faith. See Chrysler Corp., 441 U.S. at 293, 99 S.Ct. at 1703.

Duffy makes much of a small number of pages which contain, in his words, "standard boilerplate language" or are "blank." Reply to Def.'s Resp. to Pl.'s Mot. Summ. J., pg. 1, emphasis in original. On review, however, even seemingly innocuous information, such as a fax number, an author's email "signature" or the agency's privacy policy containing contact information, exposes agency communication by identifying the participants, dates of discussions, etc. The Navy's failure to produce these pages is thus not indicative of bad faith.

Lastly, Duffy complains that the Navy failed to produce a *Vaughn* Index, similar to a civil litigation privilege log, after being so ordered by the court. There was no transgression here, however, because the Navy opted to produce the pages in lieu of creating such an index, as was its right. Church of Scientology Int'l, 30 F.3d. at 228. Duffy's complaint is therefore without merit.

### C. **Duffy's Request for Litigation Fees**

Duffy also seeks "costs" for litigation of this matter, which he specified as "reimbursement of all legal costs ( i.e. filing fee, postage, copying, and other expenses legally entitled to)." Reply to Def.'s Response to Pl. Mot. Summ. J. at pg. 2. Duffy's request for fees must be denied because he did not substantially prevail here. See Maynard, 986 F.2d at 568.

**III.    CONCLUSION**.

For the foregoing reasons, Plaintiff's Motion for Summary Judgment is *denied*, and Defendant's Motion for Summary Judgment is *allowed*, except that: (1) the Government is ordered to clarify the number of redacted pages, see page 4, supra, within 14 days, and (2) the Navy must produce the names withheld under Exemption 6 from within the four redacted pages.

/s/ Leo T. Sorokin
LEO T. SOROKIN
United States Magistrate Judge

Q:\Opinions Ready for Docketing\04cv10547 Duffy SJ Memo and Order.wpd